UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JOHN R LAPLANTE,

*Plaintiff,*

v.

CITY OF MUSKEGO, SAMUEL WEINKAUF,
SHAWN DIEDRICH AND CHELSEA SHOCKLEY,

Case No: 2:24CV00215BHL

*Defendants.*

## AMENDED COMPLAINT

NOW COME the above-named Plaintiff, John R. LaPlante, by his attorney, Andrew Shaw from Shaw Law Offices, and for his cause of action against the above-named Defendants, alleges and shows claims for relief as follows:

### INTRODUCTION

1. This is a federal civil rights action under the 4th and 14th Amendments to the Constitution of the United States and Title 42 of the United States Code, Section 1983. Plaintiff brings this action to obtain compensatory damages, punitive damages, attorneys' fees, costs and equitable relief for Plaintiff's serious personal injuries, resulting from Plaintiff being unlawfully subjected to excessive force when he was beat up and broke his wrist on February 18, 2021 by Defendant City of Muskego Police Officers Samuel Weinkauf and Shawn Diedrich. Defendant Chelsea Shockley did not stop the beating. The conduct of the Defendants and the constitutional violations suffered by Plaintiff occurred as a direct result of the incident

1

more particularly described in this Complaint.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

3. This Court has jurisdiction over federal claims under 28 U.S.C. § 1331 and the state law claim for indemnification under 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Muskego is a political subdivision of the state of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

5. Plaintiff John LaPlante is a resident of the State of Wisconsin.

6. Defendant City of Muskego is a political subdivision of the state of Wisconsin and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

7. Defendant Samuel Weinkauf (hereinafter "Weinkauf") was, at the time this occurred, employed as a police officer with the City of Muskego Police Department.

8. Weinkauf was acting within the scope of his employment with the City of Muskego Police Department when he approached, seized, and used excessive force on Plaintiff LaPlante on the 18th February 2021.

9. At all times relevant to this action, Weinkauf was acting under the color of state law, ordinance, and regulation. Weinkauf is sued in his individual capacity.

10. Defendant Shawn Diedrich (hereinafter "Diedrich") was, at the time this occurred, employed as a police officer with the City of Muskego Police Department.

2

11. Diedrich was acting within the scope of his employment with the City of Muskego Police Department when he approached, seized, and used excessive force on Plaintiff LaPlante on the 18th February 2021.

12. At all times relevant to this action, Diedrich was acting under the color of state law, ordinance, and regulation. Diedrich is sued in his individual capacity.

13. Defendant Chelsea Shockley (hereinafter "Shockley") was, at the time this occurred, employed as a police officer with the City of Muskego Police Department.

14. Shockley was acting within the scope of her employment with the City of Muskego Police Department when she approached, seized, and witnessed excessive force used on Plaintiff LaPlante and did not stop the actions of her peers on the 18th of February 2021.

15. At all times relevant to this action, Shockley was acting under the color of state law, ordinance, and regulation. Shockley is sued in her individual capacity.

## FACTS

16. On 18th February, John LaPlante was the victim an unjustified beating at the hands of City of Muskego Officers Samuel Weinkauf and Shawn Diedrich. Defendant Chelsea Shockley witnessed and did not stop the beatings.

17. John LaPlante, who was 47 years old at the time, was on his way to Waukesha County jail to give his friend, Keith Zielinski, a ride. Unfortunately, LaPlante entered the wrong address into his GPS, mistaking 515 Moreland Rd for 515 Moreland Blvd, which led him astray. While trying to find the correct location, he drove past a police vehicle occupied by Shockley. Officer Shockley subsequently stopped him and requested his driver's license, then returned to her patrol car.

18. While Officer Shockley was holding onto LaPlante's driver license and Officer

Weinkauf had just arrived, roughly 20 minutes had passed without any communication from them. Concerned that this delay might be a form of retaliation due to previous complaints LaPlante had filed against their department, he attempted to catch Officer Shockley's attention by calling out loudly from his window. Receiving no response, LaPlante stepped out of his vehicle, just beside the door, to ask the officers if he could leave to pick up his friend.

19. Given the late hour and having been awakened pick up his friend, LaPlante was understandably exhausted. However, as soon as LaPlante stepped out, Officer Shockley instructed him to get back into his truck, which he complied with immediately. Subsequently, both officer Shockley and Weinkauf approached LaPlante's vehicle, aggressively demanding that he exit the truck without providing any reason. Their failure to explain why LaPlante needed to get out scared him, prompting him to express his reluctance to leave the truck.

20. After Officer Shockley opened the driver's side door, she began to pull on LaPlante's arm, while Officer Weinkauf, having opened the passenger door, also pulled on LaPlante with an excessive force. They then used a taser on LaPlante three times and then sprayed him with mace, continuing to exert force. This situation escalated into LaPlante's fear for his life, because he was convicted felon and about becoming a statistic of a police shooting,

21. Subsequently, Officer Diedrich arrived at the scene. Together with Officer Weinkauf, they began to forcibly remove LaPlante from the truck, while Officer Shockley moved to the passenger side of the vehicle and merely stood by, distancing herself from the confrontation (this can be corroborated by body and squad camera footage). Officers Weinkauf and Diedrich aggressively slammed LaPlante's face-first into the pavement, resulting in head injuries and a broken wrist (as documented in medical records). They pressed their knees into back of LaPlante's head and neck with excessive force, all of which are actions captured on

4

body and squad camera footage.

22. While lying on the pavement, LaPlante was in severe discomfort; his eyes were burning from the mace. As they waited for the ambulance, Officer Weinkauf falsely claimed that LaPlante had struck Officer Shockley. Hearing this false accusation, LaPlante stated that he had not hit Officer Shockley( verified through officer body camera footage).

23. Following LaPlante transport to the hospital by ambulance, he underwent various tests. Officer Weinkauf requested to draw LaPlante's blood. LaPlante agreed to this, if they first treated for the burning in his eyes from mace. Officer Weinkauf asked LaPlante if he was refusing, to which LaPlante clarified that he consented to the blood draw. In an exchange caught on body camera footage, another officer whispered to Officer Weinkauf that he had already recorded it as a refusal.

24. Subsequently, LaPlante was taken to the county jail.

25. During his initial court appearance, LaPlante discovered that the certain officer from Muskego Police Department had falsely accused him of hitting an officer, a charge unsupported by evidence (confirmed through camera footage and a letter from Chief of Police Stephen Westphal of Muskego). In his letter, Chief Westphal explicitly stated that LaPlante's hands were raised, the hands were not used to strike anyone.

26. Additionally, LaPlante faced charges for possessing cocaine base, which was medication belonging to his sister, found in his mother's truck contained a prescription bottle bearing his sister's name. Other charges levied against him included resisting arrest, operating while intoxicated (OWI), refusal to take a test, driving left of center, and issues related to the registration of his mother's truck. Governor Evers had suspended the requirement for vehicle registration renewal due to COVID-19 pandemic. This directive implied that law enforcement

5

officers were advised not to pull over vehicles solely for registration-related issues.

27. Despite being a convicted felon, he has made significant efforts to reform his life positively after serving a lengthy prison sentence. Upon release, he successfully completed 11 months in a halfway house without any infractions, followed by four years on supervised release, from which he was discharged a year early due to his exemplary conduct. For past six years since leaving supervised release, he had no encounters with the police, consistently making the right choices Yet, within a span six months in 2020-2021, has been subjected to two traffic stops by the same law enforcement agency, during which he experienced undue force and felt he was being targeted because of his past felony conviction. He asserts his innocence as alleged in the Waukesha County criminal case: *State v. John R. LaPlante*, Case No. 2021CF283.

28. The body cam and dashcam footage corroborates LaPlante's federal civil right actions, clearly demonstrating the unwarranted use of force and misconduct by Defendant Officers.

29. Furthermore, medical records from an X-ray taken after release of LaPlante from jail reveal that his wrist fracture was already in a ten-day healing phase, pinpointing the injury to the date of the incident on February 18, 2021. This incident has also led to a diagnosis of PTSD, for which he is being in therapy.

30. The actions of the Defendant Officers breached legal standards and inflicted profound trauma on John LaPlante.

31. Defendant Officer Shockley stopped LaPlante for driving his mother's truck on a street at around 1:33 a.m., in the morning, which is not a crime to drive his mother's vehicle, especially when he was lost.

6

32. Officer Shockley never told LaPlante the reason for stopping LaPlante. "I didn't even want to be there because they had beat me up last time, they pulled me over and they hurt me bad?" Officer Shockley said okay and took LaPlante's driver's license and went back to her patrol car.

33. LaPlante previously filed a complaint against the police officers from New Berlin Police Department and Muskego Police Department for excessive force and other misconduct violations following an incident on September 27, 2020, in Muskego, Wisconsin.

34. At that time, LaPlante protested his arrest, leading to officers forcibly removing him, causing head trauma and unconsciousness.

35. LaPlante's complaint against the officers was hindered by the lack of his personal transportation and no body cam footage for the September 27 2020 incident. LaPlante dropped the complaint due to missing evidence.

36. Officer Weinkauf's body cam was turned off for February 18, 2021 incident. However, Officer Weinkauf's body cam was on in the ambulance and the hospital for February 18, 2021 incident.

37. Officer Shockley's body cam was on.

38. The dash camera on Shockley's patrol car was on.

39. The three counts are stated in the criminal complaint against John LaPlante (State v. John R. LaPlante, Case No. 21CF283):

> Count 1: BATTERY TO A LAW ENFORCEMENT OFFICER
> Count 2: POSSESSION OF NARCOTIC DRUGS
> Count 3: RESISTING AN OFFICER

40. The probable cause of the criminal complaint states as follows:

> ...Officer Shockley's reports state that on Thursday, February 18, 2021, at approximately 1:33 a.m., she was conducting routine patrol and stopped at the stop sign on

7

Martin Drive at College Avenue in the City of Muskego, Waukesha County, Wisconsin and observed a vehicle traveling westbound on College Avenue approaching her location. She observed that the vehicle had expired registration. Upon further observation, the vehicle was traveling approximately 20 mph under the speed limit. The vehicle drove over the center line completely with both driver's side front and passenger side rear tires. Based on this observation, Officer Shockley performed a traffic stop on the vehicle. She made contact with the driver who was ultimately identified as John R. LaPlante, hereinafter referred to as the defendant. The defendant stated he was trying to find the police station and to pick up his friend. When asked what police station he was trying to find, he stated, "Ah, six hundred feet away." The defendant stated that he put an address into his GPS on Moreland Road.

While questioning the defendant, he did have slurred speech. He stated that he already had a charge coming from us and was suing us, as well as the New Berlin Police Department. He then talked about a previous incident, where force was used on him. He stated he was picking up his friend from the New Berlin Police Department, and that his friend had contacted him at approximately 11:00 p.m. Officer Shockley noted that was approximately two hours ago. The defendant continued to get more and more agitated. The defendant was stammering and stuttering his words. He had problems telling the officer his friend's name. Officer Shockley believed that he had previously been arrested for Operating While Intoxicated, and was returning to her squad to run the defendant's prior record, when the defendant asked, "And this car is not being searched. I'm not letting it be searched." Based on the defendant's increasingly level of agitation, Officer Shockley did ask for a second officer to respond to the traffic stop. She then learned that the defendant had previous contact with law enforcement on September 27, 2020, where he was arrested for Operating While Intoxicated First Offense, and officers had to use force.

Victim A then arrived on scene and was standing next to the defendant's passenger side. While Victim A was standing next to the vehicle, the defendant began to exit the vehicle and appeared to be highly agitated. The defendant was given multiple commands to get back inside his vehicle. Additional officers were then called to the scene. The defendant was yelling that he wanted his identification back so he could pick up his friend. The defendant did get back into his vehicle but was still yelling outside the driver's window. Officer Shockley then reapproached the vehicle and asked the defendant to step out of the vehicle. The defendant stated he's not stepping out vehicle. He then refused to exit the vehicle. The driver side door was then opened and he was instructed to exit the vehicle, and he stated he was not going to step out of the car period. Officer Shockley then initiated physical contact by blanketing the defendant's arm to get him to exit the vehicle. The defendant then began resisting Officer's Shockley's actions. Additional officers did have to use both a Taser and OC spray in order to get the defendant to exist the vehicle. Victim A, at one point, did enter the passenger side of the vehicle in an attempt to shut off the vehicle and push the defendant out of the vehicle through the driver's side door. Victim A did initiate contact with the defendant by attempting to perform a pull and pushdown passive countermeasure in an attempt to decentralize the defendant out of the vehicle. Victim A did attempt to secure the defendant's head by placing both of his hands behind the head and neck area. The defendant then began exhibiting assaultive behavior. The defendant began to counter-grapple with Victim A by grabbing him in the body and head. The defendant also striking Victim A in the head with an open palm in

an attempt to remove him from the vehicle. The defendant strikes to Victim A's body and head caused pain, and Victim A did not give him permission to strike him. The defendant was ultimately removed from the vehicle.

After the defendant was removed from the vehicle, Sergeant Shawn Diedrich did walk his canine officer around the vehicle. The canine gave a possible indication on the vehicle, and the vehicle was searched pursuant to probable cause. In the center console, there was a pill container that contained two separate white baggies with a white powdery substance. These baggies were ultimately transported to the Muskego Police Department, where they were weighed and tested. The first baggie weighted 2.3 grams in the packaging, and the second baggie weighed 3.5 grams in the packaging. The substance inside both baggies field tested positive for the presence of cocaine.

Victim A's reports indicated that after the defendant was arrested, the City of Waukesha Police Department, who assisted in the defendant's transport, did locate a powdery substance on the defendant's person. The field test for that white powdering substance was inconclusive and that the substance was sent to the State Crime Lab for analysis.

...

41. LaPlante states there was no "Victim A."

42. LaPlante is the Victim from the Defendants.

43. LaPlante never drank alcohol on February 18, 2021.

44. LaPlante never hit any object with his mother truck on February 18, 2021.

45. LaPlante's vehicle did not cross the line as described in the complaint. This is confirmed by Shockley's squad cam.

46. There was no immediate harm to the officers.

47. LaPlante saw one of officers pull his gun and appointed at the vehicle. This is confirmed by Officer Weinkauf's squad cam.

48. LaPlante was scared and did not want to come out of his vehicle.

49. LaPlante was previously beat up by New Berlin and Muskego Police Department on September 27, 2020.

50. LaPlante was fully aware of the George Floyd's incident as well as many other victims of the Police Officers.

51. LaPlante never struck any officers.

52. LaPlante's hands were on the string wheel of the truck the while officers were pulling him out of the truck.

53. Upon information and belief, officers were searching the vehicle before the Caine were used. This can be confirmed by the body cam of the officers who had their cams on.

54. Because of their conduct and actions, Defendants Weinkauf, Diedrich, and Shockley are not entitled to qualified immunity.

55. The criminal case against LaPlante is pending in the Waukesha County Circuit Court. LaPlante files this complaint to safeguard his legal claims before the statute of limitations, which is set to expire on February 17, 2024, runs out.

## COUNT I:
### 42 U.S.C. SEC. 1983 Claim for Excessive Force

56. Plaintiff realleges the above paragraphs.

57. The intentional actions of Defendants Weinkauf, and Diedrich of throwing Plaintiff to the ground, beating him, slamming face into the pavement and kneeing him in head and neck and remaining parts of his body so hard that they broke a bone in his wrist. Their actions were unjustified and demonstrated the excessive use of force. These actions violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure in violation of 42 U.S.C. Sec. 1983.

58. Defendants Weinkauf's and Diedrich's use excessive force against Plaintiff LaPlante on the streets where Plaintiff LaPlante was initially detained.

59. The unlawful actions of these Defendants are captured by Dash Cameras of the squad vehicles and body cameras of the Officers. Without the exception of Defendant Weinkauf, Officers had their body cameras on.

60. The aforementioned actions of the Defendants where the direct and proximate cause of the constitutional violations set for above and of Plaintiff's injuries, including pain, mental suffering, anguish, fear, humiliation, loss of personal freedom, and expense.

WHEREFORE, pursuant to 42 U.S.C. Sec. 1983, Plaintiff demands actual or compensatory damages against Officers Weinkauf, Diedrich, and Shockley and because they acted maliciously, wantonly, or oppressively, punitive damages, plus costs of this action, attorney fees, and such other and further relief that the Court deems just and equitable. Additionally, Plaintiff asks this Court to find that the City Muskego is liable to defend this action against Weinkauf, Diedrich, and Shockley and required to satisfy any judgment against their employees, by virtue of Wis. Stat. Sec. 895.46.

## COUNT II:
## 42 U.S.C. SEC. 1983 Claim for Unlawful Detention and Unlawful Arrest

61. Plaintiff realleges the above paragraphs.

62. LaPlante explained to Officer Shockley that he was suing them and the New Berlin Police Department for previous excessive force used on him. LaPlante expressed his concerns to Officer Shockley.

63. Defendants' decision to detain and then arrest LaPlante through verbal

11

commands and physical force without reasonable suspicion or probable cause in violation of Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure in violation of 42 U.S.C. Sec. 1983.

64. The aforementioned actions of Defendants were the direct and proximate cause of the connotational violations set forth above and Plaintiff injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. Sec. 1983, Plaintiff demands actual or compensatory damages against Officers Weinkauf, Diedrich, and Shockley and because they acted maliciously, wantonly, or oppressively, punitive damages, plus costs of this action, attorney fees, and such other and further relief that the Court deems just and equitable. Additionally, Plaintiff asks this Court to find that the City Muskego is liable to defend this action against Weinkauf, Diedrich, and Shockley and required to satisfy any judgment against their employees, by virtue of Wis. Stat. Sec. 895.46.

## COUNT III:
## 42 U.S.C. SEC. 1983 Claim for First Amendment Retaliation

65. Plaintiff realleges the above paragraphs.

66. LaPlante exercised his first amendment right by telling the officers that "they are out of control and they really did it this time."

67. LaPlante told officer Shockley "I didn't even want to be there because they had beat me up last time, they pulled me over and they hurt me bad."

68. Defendants' decision to illegally arrest, search, and use physical violence against Plaintiff was an adverse action designed to discourage LaPlante from engaging in protected speech by making it clear that expressing distaste for the police's action taken against

12

him would result in retaliation and punishment.

69. LaPlante as a convicted felon was vulnerable and the dash and body cam will support LaPlante's claim.

70. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and Plaintiff's injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. Sec. 1983, Plaintiff demands actual or compensatory damages against Officers Weinkauf, Diedrich, and Shockley and because they acted maliciously, wantonly, or oppressively, punitive damages, plus costs of this action, attorney fees, and such other and further relief that the Court deems just and equitable. Additionally, Plaintiff asks this Court to find that the City Muskego is liable to defend this action against Weinkauf, Diedrich, and Shockley and required to satisfy any judgment against their employees, by virtue of Wis. Stat. Sec. 895.46.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury, pursuant to FED. R. CIV. PRO. 38(b), on all issues so triable.

Respectfully submitted:

Dated: April 24, 2024.

Shaw Law Offices
Attorney for Plaintiff

_____
Andrew Shaw
State Bar No. 01018100
6815 W. Capitol Dr. Rm. 115
Milwaukee, WI 53216
414.535.9626